South Carolina Department of Health and Human Services, South Carolina's Medicaid Agency. As a threshold matter, this case focuses on the Department's termination of Plaintiff Edwards, the individual plaintiff who's a Medicaid recipient in this case, the termination of her preferred Medicaid provider, who is the Planned Parenthood affiliate in South Carolina. It's unquestioned that the Department terminated the provider contract with the Planned Parenthood affiliate because providers who operate abortion clinics were deemed unqualified to participate in the state's Medicaid program pursuant to Executive Order 2018-21 by Governor Henry McMaster. Governor McMaster isn't a party to this case, and the plaintiff has never challenged that executive order or disqualification. And the district court asserted in the hearing on the term that you just used, qualified, that the governor makes the determination that an entity is not qualified if it does this. Where does that come from in the federal statute? It's part of the statute, Your Honor, that's actually the main focus here, which is subsection A23. In that statute... But the use of the word qualified there is a term in which the federal government wants to determine the place you're going, are they qualified, and then it has an antecedent clause there to provide these medical services. Where do you get that the qualification can extend to something beyond that, whether one has a policy or whether you support a particular use of funds for one thing or another? Judging what the Medicaid statute says, it doesn't define what qualified means. It gives the power to the states. But it has more than just the word qualified, it tells you qualified to. It says qualified to provide the services, Your Honor. However, the decision about what is qualified is not set by the statute and Medicaid agencies. How difficult is it to determine if one is qualified to provide medical services? Don't you look at things like licensure and the ability to be able to provide it otherwise? Is that a difficult proposition at all? No, Your Honor, I don't believe it is a difficult proposition, but I don't think there's a limitation on the state's ability to qualify. And my point is that the qualification... Let me understand the distinction you're making there. So it seems that when you say it's not a difficult decision, you're sort of conceding the second prong of blessing, which I'm not sure you want to do. And so that's why I'm not sure exactly what you mean by that. But then the second question, which I think is Judge Wynn's, goes to Judge Wynn's point, is when you talk about qualified to perform services, how do you define that? So in other words, does your argument sort of turn on the idea that the state's ability to determine qualification is without any limit? So in other words, Governor McMaster could say you only are qualified to provide medical services under this type of provision in South Carolina if you graduated from MUSC, right? If you made the mistake of going to Marquette, for example, and you came down to South Carolina and tried to practice medicine, Governor McMaster says you don't get Medicaid funds, right? Without cause, um, maybe even irrational. Can the state do that? I think if the state did that, then the Medicaid Act is clear that the Secretary of DHHS would have the ability to say you are not following the Medicaid Act. But what you're doing is, are you claiming a plenary authority on the part of the state to simply, in its own discretion, disqualify those whom it deems not qualified? I mean, is this a plenary authority over qualifications that you believe the state possesses? I believe the state can disqualify providers. For any reason. If it, that legitimately furthers a legitimate state interest. Well, in other words, whatever state interest is asserted, that automatically leads to the state's authority to disqualify a provider. So support for MUSC, in my example, like that's a, you know, that's a state school, right? We like state schools. And so that would be an arguable state interest, right? It's in favor of, you know, state education, right? That would fly. I find it hard to believe that you think that that would be a permissible qualification decision by the state of South Carolina. Judge, that is not, that is not my position. My position is first, that I do believe the state under the Medicaid Act is granted the authority to make qualifications decisions and to decide whether or not to provide. Tell me where that is. Where is it that it is stated that the state has the power to determine who is qualified? Your Honor, it is in section, it's 42 CFR section 431, 51C2, permit states to establish reasonable standards relating to the qualification of providers. If all qualification of providers was that they were licensed. I'm sorry, can you give me that site one more time? Yes, 42 CFR section 431.51C2. If all qualifications. Has any other court looked at that section and addressed your argument to that point you're making there? It has been brought up, Your Honor, in several of the circuit arguments. However, I have not seen it addressed directly. No one has gone in your favor on that. Not one court. Well, Your Honor, I don't actually think this, my point initially was that I don't think this case. We're talking several circuits here. We're talking, how many circuits, five? Yes, Your Honor, five circuits and then the eighth circuit. Right on point. Totally reject that. That does not, that is not what that is talking about. It is not talking about expanding that authority in this way. It is dealing more with qualifications and coverage. Your Honor, respectfully, I believe those circuits are mistaken. If qualification meant. All five of them. Yes. If qualification meant merely that the provider was licensed or capable. What you're essentially saying, you know, is that they are, that Planned Parenthood is not qualified because it performs abortion services. But there's no circumvention of the Hyatt Amendment or that the billing here on the part of the provider, Planned Parenthood, will be for an abortion service. In fact, the district court had the, made a point of saying that the billing submitted by the provider was a fee-for-service billing arrangement and none of those services were abortion. So does the, does, just because an organization provides abortion services, if the individual involved, Ms. Edwards, she's not seeking abortion, she's not seeking abortion. She's not going to Planned Parenthood for an abortion. She's going to try to control her blood pressure and to try to go have an IUD inserted because birth control measures are necessary for her to have a, avoid a perfectly disastrous, life-threatening pregnancy. And you're saying that a state has the authority to disqualify a provider because it performs abortion when nothing is being billed for abortion and when the individual who is seeking the assistance of this, of this provider is not seeking an abortion. I mean, it doesn't, it just doesn't connect. I mean, this is, this is not a question of whether Roe v. Wade is a constitutional trespass or anything like that. It's, it's just a question of statutory interpretation and this broad view that you take of the state's authority to disqualify any and all persons, providers for any and all reasons. My problem with that is that it, it seems to just reduce to meaninglessness the whole free choice provision. And we just would be, we'd just be reading it right out of the statute if we, I fear, if we had adopted your, you know, your view. Because as I say, this is, they're not, we're not talking about an abortion service here. We're talking about seeking all kinds of therapeutic medical care for other reasons. Three points, Your Honor. First, my point was that Ms. Edwards had not challenged the qualification by the state. I represent the Medicaid agency. Medicaid agency did not disqualify Planned Parenthood. They terminated the agreement with Planned Parenthood because she was disqualified by the governor's executive order. And my point was that the governor's executive order has not been challenged. It is not for the score. But what I'm, what I'm asking is, my colleague Judge Wynn said correctly in my judgment that the word qualified in the statute is not just hanging there in isolation. It says qualified to perform the service or services required. So that would mean the services or service requested. And there's no abortion requested here. There's some other therapeutic services. I don't see anywhere in the record that Planned Parenthood is not qualified to perform those services. Your Honor, respectfully, I believe you're conflating the idea of capable or licensed and qualified. Qualified is a term of art under the Medicaid Act. I would think it would, but the natural meaning of qualified would be medically competent to perform services. I disagree. Well, if Judge Wilkerson's conflating it, then five other circuits has done the same thing. Exactly that rationale. And keep in mind that Medicaid, even when Medicaid provides coverages for abortion, it is limited by federal law to only those type of abortion that result from rape, incest, or threats to life. It's a very limited provision under Medicaid. Federal law does not let you just go and provide an abortion for any reason. It's got to be for rape, incest, or threats to life. Very limited here. So the impact of the federal law insofar as cutting off an entity from receiving Medicaid because it performs abortion, the Medicaid influence on it is very limited. Even in that instance, when you add that to Judge Wilkerson's points that are being made in terms of qualifications, nowhere in the Act, no one has interpreted those qualifications to extend in the matter that you provide here today. And I think as Judge Richardson indicated, if you do, what is the limitation of it? What can you then, just in your own opinion, decide who can and who cannot go to a facility? And that's the point of Medicaid, is to just lean in. You can see all kinds of evils that can come if you say, well, you can only go this place here, you only go that place. And here, this particular lady, Planned Parenthood, is not here, as I understand. This injunction applies just to Ms. Edwards here. It is very clear that her, in particular, there are specific reasons why she goes to Planned Parenthood. Your Honor, respectfully, Judge Wilkerson, I do not believe that there is a private right of action under the reasoning in Gonzaga's and Armstrong that says that a plaintiff like Ms. Edwards has the right to go to any provider she chooses. Well, I mean, maybe you think that, but I think that's a tough row to hoe in light of the statutory language. I'm not a great believer in the blessing decision to have 1983 as a vehicle for private rights of action, but we're judges of an inferior court, and we're bound to follow a blessing. And you have these six circuits, all of whom point out that the free choice provision is addressed to any individual eligible for medical assistance. Now, that language, any individual eligible for medical assistance, would seem to suggest to me that Congress had in mind a private right of action. And why did Congress have in mind a private right of action? Because they're very poor people in this country who don't have access to halfway decent medical care. Congress is trying to redress that with a statutory provision that doesn't interfere with the Hyde Amendment or that doesn't raise very sensitive questions involving abortion. But it's a nationwide problem, but in our section of the country, the Southeast, there are people who are really desperate for some kind of qualified health care. And Congress says they have a choice, and you just can't arbitrarily limit that choice in the manner that you're seeking to do. It just goes right against what this program was designed to achieve and what Congress in particular was designed to effectuate through this provision. And, you know, I understand the altogether admirable convictions that underlie this lawsuit, and I don't disparage them for a minute. But this free choice provision has to mean something. It has to mean something for the efforts of the least fortunate in our country to seek some basic level of health care. That's my problem. You've got some rebuttal time. Yes, Your Honor. Ms. Klapman. I don't want to throw you off, but can you start sort of where she ended? Judge Wilkinson and Judge A23, in essence, to be medical qualifications, right? So that's like your ability to cut somebody open and take things out or whatever that medical qualification is. I've got some angst about that because if you look at the end of A23, it talks about disqualifying for certain convictions. If you look at P1, it talks about disqualifying for overbilling and or do medical services. So can you give us your view on is qualified limited to medical qualifications? Is it broader? If so, how much broader and what is your limiting principle that doesn't let them get as far as they've gone here? Does that make sense? It does. I'd be happy to, Judge Richardson. So as the other courts, lower courts who have looked at this have found the bounce to strike is qualified can mean something more than just technically competent to so. When you're saying the other courts, you're talking about the other circuits. I am, Your Honor. How many are we talking? I'm talking about the four circuits who have reached this specific issue or rather five more broadly. What they found is that competent technically competent to provide but also competent to provide safe, legal, ethical medical care. They have also said that both HHS and states have as part of the Medicaid Act, the authority to disqualify providers for fraudulent billing, for example. So qualified does encompass concerns about the integrity of the Medicaid program. But where am I looking to see that limitation, right? So I see when I look at the end of 823, I look at P1. I totally get and I appreciate you agreeing that it's not just medical. It's something broader than medical. But then you sort of seem to say, all right, now let's put the boundary here. Where do I look to see that boundary? You've described it. I understand that. But where am I getting that? Where are you getting that from? And I understand there are five courts that have said it or maybe four of them have actually said it. But either way, where am I getting that other than just some other judge saying it? You get it, Your Honor, from subsection P1, which sets forth specific grounds for excluding individual providers. But it's a non-exclusive list, right? So you don't get a boundary by a what grounds Congress was envisioning qualified, you know, disqualifying providers for. So in other words, you're sort of saying that of a like kind. So we ought to read the other provisions permitting disqualification to be of a like kind to crime, fraud, overbilling, and the like. Correct. And I think the other place you find your limit is in subsection 823. As the discussion before highlighted, Congress didn't just use the term qualified. And defendant wants to turn that into some sort of Medicaid term of art and hand it over to the states. But Congress was very specific in saying qualified to perform the service or services required. Right. But the problem with that is that you can see it also includes overbilling, right, which is really not qualified to perform the services, right? I mean, qualified to perform the services. If that was by itself, I'm with you. It's a medical qualification. But we know from P1 and the end of 823 that it's not limited to medical. That's the rub I've got. I think you've answered it, but that's the rub that I see. Respectfully, I think that questions about proper billing, for example, are encompassed in the term qualified to perform the service or services required. No, no, they have to be. I agree with that. I don't. And I think my colleague's question is a very good one. But you're not contending that the state doesn't have broad authority over qualifications. And the state does have broad authority over qualifications. And they go to all sorts of fraudulent behavior that may be not strictly medical. But what you're saying is that as broad as the state's authority is, it's not without limitation. And it's not plenary. Because if it's totally plenary, you just saw off the free choice provision and eliminate and reduce the meaninglessness a provision that's essential to the statute. And we have to harmonize the P1 and 23A. And the way you do it is saying, yes, they have broad qualifications. And even that list is not exclusive. The statute makes that clear. But it doesn't, in light of the three free choice provision, this is a specific limitation on it. In a way, it's a question of the specific trumping the general. And this is a specific limitation addressed to a specific problem, which is before us in this case. And I don't think you're trying to limit or contesting the fact that the state has many, many reasons to disqualify health care providers. But just not here. Exactly, Your Honor. And it does come back to, as Your Honor pointed out, the intent behind the free choice of provider requirement, which was Congress in 1967 recognized that Medicaid beneficiaries already contend with limitations on access to critical health care. And what Congress was trying to do with that provision is allow those individuals the same type of freedom to choose their own provider that privately insured patients have. And that would, what defendant is trying to do here, would make that a completely hollow promise. Is there any argument, is there any dispute in the record that Planned Parenthood is not qualified to perform the particular services that Ms. Edwards requests? Is there any dispute in the record that they're not qualified to deal with her blood pressure problem or with the consequences of a pregnancy in terms of something which probably would be life-threatening? But is there any dispute in the record that they're qualified to assist with those medical problems that she presents? None at all. Planned Parenthood and its predecessor organization, Planned Parenthood organizations, have been providing high-quality care in South Carolina for decades. And a defendant has been clear here that he is attempting to disqualify or exclude Planned Parenthood without cause. So there's no dispute in the record about Planned Parenthood's qualification to perform the services required for Medicaid. Counsel, are you familiar, and I'm not trying, this is not a game of gotcha, right, but are you familiar with Judge Elrod's dissent from denial of en banc in Guy? Does that ring a bell at all? Judge Elrod there makes the argument that the Supreme Court in among whoever the state deems to be qualified, right? That's how Judge Elrod interprets O'Bannon and does so based on some sentences that are pretty clear that the recipient has the right to choose among a range of qualified providers but does not have a right to have a hearing on who's qualified or to receive benefits for someone who the state, I think it later says, an institution that has been determined by the state to be unqualified. And so if they don't have a substantive right under A23, tell me why that doesn't resolve the scope of the right here because it seems to me you're saying they are entitled to a cause of action to determine who is or who isn't qualified. Judge Elrod at least, I think fairly persuasively argues that O'Bannon should be read to preclude that. Why is Judge Elrod wrong? Okay, so O'Bannon, what Judge Elrod reads O'Bannon for I believe is what the meaning of the free choice requirement is. And so that really goes a little bit more to the merits of the claim than the right. I mean, it's defining the scope of the right because in the subsequent paragraph, it says, you know, the Court of Appeals, right, just talking about the lower court said, failed to give proper weight to the contours of the right. And we know from Blessing and our decision in Doe versus Kidd that it's not a right generally. It's the specific right. You have to and I think there's a reasonable argument that O'Bannon defines the, quote, contours of that right to be the right to choose among providers that the state qualifies. So what four courts of appeals have held is that O'Bannon cannot stand for that because that would read out of existence the free choice requirement. But also if you look at O'Bannon. No, it wouldn't read out the free because one, it's still enforceable by the secretary and two, you still would have a right to choose among the list of providers that the state qualifies for whatever reason they qualify them. Right. So, you know, and I'm with you. You got the better reading of the statute. I'm not disagreeing with that. But how do I get around O'Bannon, which is telling me what the contour of the right is? And it's defining it as saying you don't get a hearing about who's qualified or not. And if you don't get a hearing, then what are we doing? What's critical about O'Bannon and the reason it doesn't apply here is that the plaintiffs in O'Bannon were not questioning that the facility in that case had been validly disqualified. It had already been decertified by HHS based on systematic program violations. So and that was a disqualification under Medicare, which triggers an automatic disqualification under Medicaid. So what the was the right to challenge the state's decision to move them out of that facility after the facility had been legitimately disqualified. There was no dispute in court. Well, but the language, and I get that's the argument. But, you know, we don't get to sort of decide the scope of the Supreme Court's decisions. They could have decided it on a very narrow ground that you've suggested. But they say here, right, it provides this right, right, the choose, but it does not provide a right to demand a hearing to determine its qualifications. I mean, that that to me, I understand your point. This case wasn't presented there. But we also have to take the holding as broad as the Supreme Court gives it to us, right? We don't get to say, well, that part of that is dicta. I mean, that's that's what they're holding A23 means, no? I think it can't be read to say that plaintiffs don't have an enforceable private right of action for a number of reasons. First, because O'Bannon itself was a procedural due process case. And for that reason, O'Bannon didn't consider the questions presented here, for example, the blessing test. And O'Bannon also didn't consider the suitor fix Congress's amendment in 1994, where Congress made crystal clear that Medicaid Act provisions are privately enforceable, at least some of them. So that's the reason I think you can't read O'Bannon as And the point Judge Richardson brings up was one that I thought about a good deal, is that I think it comes a cropper of the language of the statute, which says, such assistance from any institution, not just those institutions that the state teams qualify. And so if we were to take Judge Elrod's view of it, we would have to amend the statute to say, from any institution agency whom the state deems qualified, we would simply have to add words to the statute. But if Congress wants to add those words, then we have a different case But here, and I think what's unique about this case, maybe, is that there's no dispute about the qualifications. But when I look at those words, any individual may obtain assistance from any institution qualified. And qualified is simply not preceded by the words, any institution whom the state deems qualified. I mean, we really would have to supply language to what's there. That's my problem. Yes. And as this case illustrates, if the state had unlimited plenary authority to disqualify providers for any reason whatsoever, there would be no content left in the free content, if the state disqualified ABC doctor for overbilling. I said, you've engaged in overbilling, you're disqualified. So a ground permitted under P1. And ABC doctor's patient comes in and says, no, no, no. Like, I don't think that guy was overbilling. I think, state, you've got it wrong. I have a private right of action under A23 to challenge your qualification decision. So in other words, I think you're factually wrong. They're not engaged in overbilling. I can see that if they were overbilling, you can get rid of them. But on the facts, do you think there's the private right of action extends that far? I think that there is deference built into the Medicaid Act. And so if a plaintiff brought that type of claim, there would be deference built into how the court would look at it. But there is a claim. You think there is a private, because that's the claim that seems most antithetical to O'Bannon. O'Bannon seems to tell us that that's the claim that you can't bring at all. You may be able to bring sort of more of a legal scope of qualified challenge, but if you're getting a factual challenge, O'Bannon seems to preclude that, no? You think O'Bannon permits that too? I think O'Bannon is about a provider who was validly disqualified and the patients were not challenging that valid disqualification. They were raising other grounds. So I think theoretically, a plaintiff could challenge the state's basis, for example, say that the state was acting pretextually or singling out a particular provider. I think that... Or just that the bills were accurate. I mean, they could literally force in a federal court to go through and go bill by bill and say, is this bill, is it over or is it under? Where's this bill? All right, now let's look at the next bill that an individual provider could force a federal court to go through bill by bill over however much time and determine whether that's within the range of reasonableness that you described. I think if a case like that were brought, there would be a question of how much evidence the state had to have and the level of deference applied to the state. I don't think that's the issue raised here. And I think that Honor is expressing sort of a floodgates concern. And I would point out that courts have found this provision enforceable since 2006 and there have been about 10 claims brought. This is interesting because I think what we're talking about here would be a different case. And it would be a case in which the state had made a judgment and some kind of reason judgment that the provider was not qualified to perform the services requested. Now if the state made that kind of judgment and then it was, you know, put forward with any degree of reasonableness, the state would be due enormous deference due to the presence of P1. And so what we're dealing with here is the narrow situation of where there's no dispute as to qualifications. And it's hard to see the deference kicks in when there's no dispute over medical qualifications and there's no contention of fraudulent billing or any of the other things that are listed in the non-exclusive list over which the state has authority. Yes, of course the state's judgment as to qualifications merits enormous deference, but what do we have here to defer to other than a statement that I don't like the fact that Planned Parenthood performs abortions? I don't like that fact either. I don't like it one little bit, but it doesn't seem to me to bear on the particular statutory question. Whether I like the fact that Planned Parenthood performs abortions or whether I don't, and I don't, it does not bear on Planned Parenthood's qualifications to perform what this I think that distinction is critical between a case where the state was following ordinary procedures to exclude an individual provider and what defendant has done here. Because although defendant is invoking subsection P1 as a source of authority, he has not even followed the procedures that HHS set forth requiring states to follow when they exclude providers for disqualifications. He didn't give Planned Parenthood notice or an opportunity to be heard before excluding it from Medicaid. The decision was instant. So I really don't think that this this case raises the issues of what a court would need to do when the state followed proper procedures and had evidence. Well it would be due all sorts of deference, but that's not our case. Exactly. Well and then we do too have our case here Doe versus Kidd. Doe also cited O'Bannon, but it wasn't for that proposition. Essentially they cited for the proposition that you could not limit the freedom of choice that was given. And Doe, O'Bannon really is a different case in terms of different types of qualifications altogether. It's different in the sense that we're talking about a nursing home that was disqualified by the government for violating numerous health care program requirements. This is a whole different ballgame here. And O'Bannon actually fits right in to the analysis that you've been articulating here from my perspective. I don't see a difference and I think Judge Elwood is totally off base on it. And I'm not alone on that along with Judge Wilkerson. There are five others or at least four of the circuits that agree with that and analysis tracks that rationale. Yes and I would point out that although this court hasn't reached the specific question presented here, that four other circuits have reached and decided in plaintiff's favor. Your Honor referred to Doe versus Kidd and in an unpublished decision in that case, this court did reach the question of whether the free choice requirement is enforceable and found that it is. And that's cited in the amicus brief national health law program. I see that my time is up. We thank you very much. Thank you. And Ms. Jolly, you certainly have some time for rebuttal. We'd be happy to hear from you. Congress does not create a private right of action under section 1993 unless it speaks with a cogent voice to clearly and unambiguously create an enforceable individual right. And in this court, we are definitely asking this court to adopt a framework from Gonzaga and Armstrong rather than the blessing factors. And the way I read most of the other circuits is that they have gone through the blessing factors and found that if they can meet the blessing factors, they are finding that it meets the Gonzaga test. However, to my knowledge, the Supreme Court hasn't applied the blessing factors since the Gonzaga decision. So I was that was literally where I wanted to go with you because your briefing says, and I'm just looking at the reply brief as an example, like you apply the blessing factors. When you go through, you go through and apply the blessing factors. I didn't read your argument until you just said that as suggesting that Armstrong and Gonzaga somehow overruled blessing and or Wilder. Are you making the argument that Wilder and blessing are no longer a good law, that we are required to ignore them? Your Honor, I believe that in the Armstrong case, the Supreme Court directly repudiated Wilder. Well, what it said about Wilder is we have something to the effect of our later opinions have repudiated the ready implication of certain rights. So they repudiated this idea, but it didn't repudiate or overrule the case, did it? Well, Your Honor, there's no opportunity to really overrule the case because that case focused on provision that's no longer enforced. You're right, Your Honor. But in the Supreme Court has used the word repudiated synonymously with overruled. And I believe that what that starred footnote in Armstrong says is the reasoning that we've done, that going through those blessing factors is not a substitute for looking for the clear and unambiguous statement that Gonzaga requires. And it's true that many of the circuits have found that there is a clearing unambiguous statement in A23. We disagree with that for four main reasons, that when you look at A23, you see four different ways. I want to be clear. You're saying blessing has been overruled in 1983 cases across the country. No, Your Honor. I'm not saying it's been overruled, but I'm saying that I think it's clear the Supreme Court prefers the explanation in Gonzaga. I don't think Gonzaga expressly overrules. Who is following that? I have not seen any cases in 1983. It's pretty extensive. It doesn't just apply in this context, but it's a pretty broad statement you're making. Who is following that rationale? Well, Your Honor. In any other context of 1983 case, take it away from this one. Every 1983 case, there are thousands of them out there. Who's following that rationale? Your Honor, again, since Gonzaga, I'm not aware of any Supreme Court case where they have gone through the blessing test, and Justice Breyer in Gonzaga and his... Do you know of any circuit court or district court that has not gone with it? Your Honor, I believe the majority opinion in the Eighth Circuit in Gillespie, that the analysis they followed goes along with the Gonzaga and Armstrong analysis, and they also go through the blessing factors, but they find that there is no clear... They also did the blessing factors, which you say should have been repudiated. Your Honor, no, sir. I said that the Fourth Circuit's case had been repudiated. I did not say that the blessing factors had been repudiated. What I said was that I believe the Eighth Circuit's analysis in Gillespie, where it focuses on Gonzaga and Armstrong, is the proper analysis, and when you look at 823, first, it's a directive to the Secretary of HHS. It's not a directive to individual plaintiffs, and while it does say that they are entitled to a qualified provider that is willing to serve them, it does not say that they get to challenge if they are denied, and it doesn't say underlooking, for example, in Gonzaga, it said when you look at the Title IX statute, where it says an individual shall not be discriminated against. Does Doe v. Kidd have an application here, if we were to consider that case from this circuit, one way or the other? I'm sorry, Your Honor. Doe v. Kidd. Does that have an application here? No, Your Honor, I do not believe so, because I believe that the analysis in Gonzaga that has been changed by Armstrong is more recent, and frankly, provides precedent that this circuit needs to fire. Doe v. Kidd is right from this circuit? Yes, Your Honor. I'm aware of that. Okay. Counsel, we thank you very much, and we thank you both for your arguments, and we will come down and greet counsel and take a brief recess. This Honorable Court will take a brief recess.
judges: J. Harvie Wilkinson III, James A. Wynn Jr., Julius N. Richardson